James C. JONES, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 12929.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 1, 1956.

Decided March 1, 1956.

Mr. Michael F. X. Dolan, Washington, D. C. (appointed by the District Court), with whom Messrs. Joseph F. Salisbury and Thomas M. O'Malley, Washington, D. C., were on the brief, for appellant. Francis G. Naughten, Washington, D. C., also entered an appearance for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Alfred Hantman, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant (defendant) was indicted, tried and convicted of a violation of the Miller Act,[1] it being claimed that he took indecent liberties with a minor child with the intent of satisfying defendant's lust, passions and desires.

At the trial, the trial judge properly found, on inquiry of her, that the child (who was five years of age) was incompetent to testify. The child's mother testified that on the day of the alleged occurrence she saw the child coming from the laundry room on the floor below the main floor of the building, and saw her running until she (the child) came to an apartment on the main floor; that when the mother reached the door to her own apartment she saw the child crying and, under questioning, the child said that a man "down in the basement" did something bad to her, that he had "put his nasty tongue in [her] mouth" and had

[1]. § 22–3501(a), D.C.Code 1951.

"put his fingers down in [her] panties and kept fooling with [her] parts." It appears that the defendant had been in the basement of the building and had been selling magazines in the building. Almost three hours after the occurrence the defendant was arrested and taken to the precinct station where, in a line-up, he was identified by the child.[2] The defendant, when confronted with the child and the mother, denied any such assault or wrong-doing.

The child was taken to a doctor, who was unable to find any evidence whatever of marking or injury. Upon completion of the Government's evidence a motion for judgment of acquittal was made and overruled. Defendant was found guilty. Upon the overruling of a subsequent motion for acquittal, defendant was sentenced, and this appeal followed.

 The statement of the child to the mother was admissible as a spontaneous declaration; but since it was the only evidence of the occurrence, the child herself not being eligible as a witness, it was insufficient to support the verdict. For one of the requisite elements with respect to evidence in a case such as this is the establishment of the *corpus delicti*. The Seventh Circuit considered this very question in United States v. Echeles, 222 F.2d 144, 155. There the court said:

"Most American courts take the view that the phrase *'corpus delicti'* includes first, the fact of an injury or a loss and secondly, the fact of somebody's criminality (in contrast e. g. to accident) as the cause of the injury or loss. The proof of these two elements involves the commis-

sion of a crime by somebody. But the phrase *'corpus delicti'* does not include the fact of the connection of the accused with the crime—his identity as the criminal, or the guilty agent through whom the wrong has occurred."

In Forte v. United States, 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120, the late Chief Judge Harold M. Stephens, in an able and exhaustive opinion, demonstrated that it is necessary to establish the *corpus delicti* even when a confession has been obtained. See also Ercoli v. United States, 1942, 76 U.S.App.D.C. 360, 131 F.2d 354.

██ In Brown v. United States, 1945, 80 U.S.App.D.C. 270, 152 F.2d 138, this court pointed out that the exception to the hearsay rule, known as spontaneous statements or declarations, has commonly been applied only where there has been independent evidence of an exciting event. In Brown, as here, the only evidence that any indecent assault took place was the hearsay evidence itself, the child not being physically injured or marked, and we reversed. We pointed out 152 F.2d at page 140:

"As we held in the Snowden and Beausoliel cases [Snowden v. U. S., 2 App.D.C. 89; Beausoliel v. U. S., 71 App.D.C. 111, 107 F.2d 292], if a child makes spontaneous statements they are admissible in evidence *when a foundation is laid for them, and either the child's condition or the child's testimony may lay the foundation.*" (Emphasis supplied.)

In the instant case, as in Brown, we have no testimony from the child and no evidence reflecting injury to her.

---

**2.** The testimony as to the identification of the defendant was as follows, the mother testifying:

"Q. Did there come a time, ma'am, when you again saw the defendant in this case, James C. Jones? A. Yes. The next day we had to go to the Police Headquarters and he was—oh, later that night. Yes, later that night we went to the Police Department, No. 14.

"Q. Now, who is 'we', ma'am? A.

My little girl, Marcia Lynn, and I. We went to No. 14 Precinct that night. And he was in a line up and my little girl identified him out of the line up.

"Q. How many persons do you recall being in that line up? A. There were three or four. Not over that.

"Q. And was Marcia Lee [sic] able to identify James C. Jones? A. Yes, she was. Yes."

(Joint Appendix, pp. 9–10)

In Dickey v. State, 147 Tex.Cr.R. 588, 183 S.W.2d 469, a somewhat similar case, the court reversed where, as here, there was nothing shown to prove mistreatment of the child—who did not testify—"save she pointed to her private parts and was crying; no bruises shown, no disarranged clothing, no disarrangement of appellant's clothes, and no overt act, save the father's statement that 'I didn't see the defendant do anything to my daughter outside of holding her in his arms like he was planning to do something.'" In Dickey, too, the court had approved the admission of evidence that the child had stated, on questioning by her mother, that "'[a] man had played with her. * * * [The mother] asked her how he had played with her and she pointed to herself. She pointed down here (indicating). That was her private parts. She didn't say anything else to me at that time.'"

The Government relies on Snowden v. United States, 2 App.D.C. 89, a case involving an alleged rape. There the court admitted—as did the District Court in the present case—statements made by the child (about five and a half years old) to her grandmother, made shortly after the alleged act. But in Snowden the abuse of the child was clearly demonstrated by injuries to the private parts of the child; thus the *corpus delicti* was established.

In Smith v. United States, 1954, 94 U.S.App.D.C. 320, 215 F.2d 682, 683, this court reversed after ruling evidence of a declaration not to have been spontaneous "in view of the evidence as a whole." In Smith the Government had attempted in its brief to distinguish Brown v. United States, supra, where the child was not physically marked or injured.

The Government urges in the instant case that no exception was taken to the admission of the extra-judicial declarations of the child. This, however, loses sight of the fact that, even if this be so, the *corpus delicti* has not been proven. Certainly such evidence would be no more convincing than a confession, which is not sufficient to excuse lack of proof of the *corpus delicti*. See Forte v. United States, supra.

This is a repellent charge, but such a charge does not destroy the presumption of innocence or justify a conviction on evidence which is not sufficient to prove beyond a reasonable doubt every element of the alleged offense (here, the *corpus delicti*).

The judgment of conviction must be and is

Reversed.