THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL BURTON, Defendant-Appellant.
Fourth District    No. 4—89—0794

Opinion filed August 16, 1990.

STEIGMANN, J., concurring in part and dissenting in part.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's
Office, of Springfield, for appellant.

Richard E. Goff, State's Attorney, of Clinton (Kenneth R. Boyle and
Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Of-
fice, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:
Section 4—3 of the Criminal Code of 1961 (Code), *inter alia*,
states the following:
"(a) A person is not guilty of an offense, other than an of-
fense which involves absolute liability, unless, with respect to
each element described by the statute defining the offense, he
acts while having one of the mental states described in Sections
4—4 through 4—7.
(b) *** If the statute does not prescribe a particular mental

state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4—4, 4—5 or 4—6 is applicable." Ill. Rev. Stat. 1987, ch. 38, pars. 4—3(a), (b).

Sections 4—4 through 4—7 of the Code contain provisions pertaining to intent (Ill. Rev. Stat. 1987, ch. 38, par. 4—4), knowledge (Ill. Rev. Stat. 1987, ch. 38, par. 4—5), recklessness (Ill. Rev. Stat. 1987, ch. 38, par. 4—6), and negligence (Ill. Rev. Stat. 1987, ch. 38, par. 4—7). The primary issue in this case concerns the question of whether a defendant is entitled to have the jury instructed as to the necessity of the State proving beyond a reasonable doubt the existence of each of the mental states implied by section 4—3(b) of the Code. We hold such instruction is not necessarily required.

On January 9, 1989, an indictment was returned in the circuit court of De Witt County charging defendant Paul Burton with various counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) on various dates between January 1986 and September 1988. After a trial by jury, defendant was convicted on June 30, 1989, of three counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(c)(1)(i).) On September 6, 1989, the court sentenced defendant to concurrent terms of imprisonment of 10 years for each such assault and 5 years for the abuse conviction. Defendant has appealed.

The jury was instructed in part concerning (1) the definitions of the elements of aggravated criminal sexual assault (Illinois Pattern Jury Instructions, Criminal, Nos. 11.33, 11.65 (2d ed. Supp. 1989) (IPI Criminal 2d (Supp. 1989))); and (2) the elements the State must prove in order to convict for that offense (IPI Criminal 2d No. 11.35 (Supp. 1989)). The defense objected to those instructions, because they did not refer to the mental state implied by section 4—3(b) of the Code to be an element of aggravated criminal sexual assault. Defendant maintains on appeal this ruling entitles him to a new trial as to the aggravated criminal sexual assault convictions. He also asserts reversible error resulted when the circuit court refused his motion to dismiss the assault charges. This motion was made after the State had filed a response to defendant's request for a bill of particulars. Defendant maintains this response was too vague. We disagree with defendant's contentions and affirm.

No contention is made that the evidence did not support the verdicts. Evidence was presented that defendant, a man in his fifties, on several occasions, within the time alleged in the indictment, placed his

penis in the mouths of, and his fingers in the vaginas of, two girls who were under the age of 13 years at the times pertinent.

■■ We consider first, the main issue concerning the propriety of the instructions. Section 12—14(b)(1) of the Code provides:

"The accused commits aggravated criminal sexual assault if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed ***." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1).)

Section 12—12(f) of the Code states:

" 'Sexual penetration' means any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f).)

Knowledge by the accused of the age of the victim is not an element of the aggravated criminal sexual assault charged here. *People v. Sanders* (1989), 191 Ill. App. 3d 483, 548 N.E.2d 103; *People v. Barfield* (1989), 187 Ill. App. 3d 257, 543 N.E.2d 157.

Indeed, the statutory provisions for the aggravated criminal sexual assaults for which defendant was charged make no mention of any mental states for the elements involved. Section 4—9 of the Code states:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." Ill. Rev. Stat. 1987, ch. 38, par. 4—9.

Aggravated criminal sexual assault is not a misdemeanor (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)), nor does the statute defining that offense clearly indicate a legislative purpose to impose absolute liability for the conduct described. Accordingly, by the terms of section 4—3(a) of the Code, the State was required to prove a mental state for each of the elements of the offense of aggravated criminal sexual assault even though no such mental states were expressly set forth in the statutory language defining the offense.

Defendant's theory he was entitled to instructions setting forth

the required mental states which the State had to prove to convict him of the offense of aggravated criminal sexual assault is based upon the general requirement that the jury be instructed as to each element of each offense charged. (*People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141; *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) He also maintains failure to set forth the required mental state in the instructions in issue deprived him of due process, because the instructions relieved the State of proving beyond a reasonable doubt each element of the offense charged. *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.

This court has recently rejected defendant's theory requiring instructions as to mental states, implied to be part of an offense by section 4—3 of the Code, in *People v. Avant* (1989), 178 Ill. App. 3d 139, 532 N.E.2d 1141, and *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139. (See also *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397, *cert. denied* (1989), 490 U.S. 1008, 104 L. Ed. 2d 162, 109 S. Ct. 1647; *People v. Ortiz* (1987), 155 Ill. App. 3d 786, 508 N.E.2d 490.) The rationale of these rulings is that the mental states there implied by section 4—3 of the Code were in the nature of general criminal mental states, distinguished from specific mental states about which the jury must be advised in instructions defining an offense or describing the elements the State must prove.

We address this subject again to consider what, if any, effect the decision by the Illinois Supreme Court in *People v. Terrell* (1989), 132 Ill. 2d 178, 547 N.E.2d 145, raised by the dissent, has upon the prior precedent. There, a defendant convicted, as here, of aggravated criminal sexual assault argued he was deprived of equal protection when the penalty for that offense was more severe than that for aggravated criminal sexual abuse. (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(e).) The assault offense is a Class X felony while the abuse offense is only a Class 2 felony. The definition of the abuse offense sets forth mental states of intent or knowledge while, as we have indicated, no mental state is specifically described as an element of the assault offense. In *Terrell*, that defendant argued that lack of a stated mental state for the assault offense inherently made that offense less culpable than one requiring intent or knowledge. The supreme court rejected that argument, pointing out that section 4—3(a) of the Code made intent, or knowledge, the mental state for aggravated criminal sexual assault.

A highly respected authority on criminal law has suggested mental states involved in criminal cases can better be analyzed with "clar-

ity" by "abandoning the 'specific intent'—'general intent' terminology" and notes the Model Penal Code does so. (W. LaFave & A. Scott, Substantive Criminal Law §3.5(e), at 316 (1986), citing Model Penal Code §2.02, Comment, at 231 n.3 (1985).) Some argument can be made that article 4 of the Code was intended to do away with the difference between general and specific mental states, particularly with regard to intent. The decision in *Terrell* would be consistent with such a theory. If the "specific intent"—"general intent" dichotomy has been abolished, the rationale for the previously cited appellate court decisions making unnecessary instructions defining mental state in certain situations is invalid.

However, the Illinois Supreme Court has not treated article 4 of the Code as changing the concept of specific and general criminal intent. In *People v. Gold* (1967), 38 Ill. 2d 510, 516, 232 N.E.2d 702, 706, decided under the Code, the court held that as the statutory definition for rape set forth no mental state, the offense was "a general-intent crime" which could be properly alleged in the language of the statute. In *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, the court concluded that, although not so stated in the Code, the intent to permanently deprive the victim of property was still an element of robbery. Accordingly, because the offense was one requiring specific intent, voluntary intoxication was still a defense to such a charge. Nineteen months later, in *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244, *White* was overruled. The court concluded the intent to permanently deprive the victim of property was not an element of robbery and need not be alleged. The offense stated did not require any specific type of intention.

Notably, at the time of *White* and *Banks*, as now, robbery consists of the "[taking of] property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1989, ch. 38, par. 18—1.) At all times pertinent, such a robbery has become an armed robbery when committed while the robber is "armed with a dangerous weapon." (Ill. Rev. Stat. 1989, ch. 38, par. 18—2.) The *White* court had concluded the offense included the unstated factor that the robber acted with the intent to permanently deprive the victim of the property taken, and that was an element of the offense upon which the jury must be instructed. The *Banks* court decided that element was no longer a part of the offense. Had the intent to permanently deprive the victim of property been an unstated element of the offense, that offense would have been a specific-intent offense regardless of whether that specific type of intent was stated in the Code definition of the offense.

Section 4—3(a) of the Code has always required that for a non-absolute liability offense to occur, the offender must act "with respect to each element described by the statute defining the offense" with one of the mental states set forth in sections 4—4 through 4—7 of the Act. (Ill. Rev. Stat. 1989, ch. 38, par. 4—3(a).) However, the *White* court did not hold that intoxication would negate the defendant's knowing or intentional use of force or threat of use of force, or the defendant's knowledge that he was armed with a dangerous weapon. The *Banks* court did not say or indicate that the charge need allege the implied mental states for those elements of the offense of armed robbery. Thus, the recognition by the court of the difference between (a) mental states set forth in very specific language in statutes creating offenses or generally recognized to be very specific, and (b) mental states implied by section 4—3 of the Code to be either intent, knowledge, recklessness, or negligence clearly supports the decisions of this court in *Avant* and *Talley*.

Very lengthy instructions would be required if instructions always need be given concerning the unstated mental states implied by section 4—3 concerning each element of each offense charged. Take, for example, the offense of armed robbery. (Ill. Rev. Stat. 1989, ch. 38, par. 18—2.) The jury would have to be instructed that for the offense to occur: (1) the robber must have known he was taking property or intended the property to be taken; (2) the robber intended to use force or knew he was using force, or threatening imminent force; and (3) the robber knew he was carrying on his person, or armed with, a dangerous weapon. In almost every offense, the statute providing for the offense is silent as to the mental state required for some element of the offense.

Usually, the mental states implied by section 4—3 of the Code are mental states which almost always accompany the acts alleged. The *Terrell* court indicated that to be the situation there. (*Terrell*, 132 Ill. 2d at 210-11, 547 N.E.2d at 159.) In *People v. Talley* (1988), 177 Ill. App. 3d 170, 173, 531 N.E.2d 1139, 1141, this court indicated that the hallmark of a general intent crime was that the mental state required ordinarily followed the element of the conduct prohibited. The case of *Louisiana v. Daniels* (1958), 236 La. 998, 1007, 109 So. 2d 896, 899, was cited.

As with the robbery offenses, the mental state implied here by section 4—3 of the Code would necessarily accompany the prohibited elements of the offense of sexual assault. Defendant would have been extremely unlikely to have inserted his penis in the mouths of the two girls without intending to do so and knowing he did. While an adult

caring for and bathing a small child might unintentionally and unknowingly place a finger in such a position as to create the slight penetration into the vagina or anus of a child described in section 12—12(f) (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f)) of the Code, the definition of aggravated criminal sexual assault would surely be given a commonsense interpretation to make such conduct innocent. Absent that type of situation, the *Terrell* opinion makes clear that the mental state required for aggravated criminal sexual assault based on such penetration would naturally flow from the commission of the prohibited acts.

We conclude *Terrell* does not require us to change our ruling in regard to the inclusion in instructions of the general criminal mental states implied by section 4—3 of the Code. However, as we mentioned in regard to the cases of *White* and *Banks*, some mental states involved in offenses, although not specifically mentioned in the statute defining the offense, may be implied in the offense and be specific enough to require instruction to the jury. Under some circumstances, the mental state implied by section 4—3 of the Code may possibly be so specific as to require instruction. See *People v. Grant* (1981), 101 Ill. App. 3d 43, 427 N.E.2d 810.

Here, the implied mental states were not specific, and the circuit court did not err in giving the pattern instructions, which did not set forth those mental states.

■ Even though defendant was originally charged in count III with aggravated criminal sexual assault, the jury found him guilty of the included offense of aggravated criminal sexual abuse. As we previously noted, defendant is challenging his conviction on that count because of the State's response to defendant's bill of particulars in which the State asserts that it can provide no more specific information than that the offense charged in count III occurred sometime between January 1986 and September 1988. Defendant argues that this range of 33 months in the State's response denied him due process of law, because defendant had a possible alibi defense which this 33-month range made it impossible for him to present. Accordingly, defendant argues that the trial court erred in denying his motion to dismiss count III. We disagree.

We begin our analysis by noting a rather striking inconsistency in defendant's argument. If he cannot tell from the State's response on which particular day within a 33-month period he is supposed to have committed the crime charged, then how can he possibly know he "has a possible alibi defense" which is being defeated because of the State's uncertainty? By pointing out this inconsistency, we do not

mean to suggest that a defendant who receives a response no more precise than this suffers no prejudice to the preparation of his defense; instead, we are simply pointing out the difficulty of determining with specificity just what that prejudice may be in a given case. Furthermore, the fact that the defendant may have suffered *some* prejudice does not, without more, justify dismissing the charges against him. This is particularly true where, as here, children are the alleged victims of sex abuse. To hold otherwise would be to jeopardize large numbers of such prosecutions, particularly with very young children, simply because they could not provide specific dates and times.

As long as the crime charged allegedly occurred within the applicable statute of limitations period, the State should be required to do no more than provide the defendant with the best information it has regarding when the offense took place. (*People v. Patrick* (1967), 38 Ill. 2d 255, 260, 230 N.E.2d 843, 845.) We reaffirm that the precise date the offense was allegedly committed is not an element of the offense. *People v. Cregar* (1988), 172 Ill. App. 3d 807, 821, 526 N.E.2d 1376, 1386.

For the reasons stated, we find no error in the trial court's denial of defendant's motion to dismiss count III.

Accordingly, we affirm the judgments of conviction and sentence.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE STEIGMANN, concurring in part and dissenting in part:

I concur in that portion of the majority opinion which holds that defendant was not denied due process of law because the State could not be more specific in its response to defendant's request for a bill of particulars than to provide a range of 33 months in which the offense of aggravated criminal sexual abuse occurred.

I respectfully dissent from that portion of the majority opinion which holds that the jury did not need to be instructed that the State must prove defendant had the mental state of intent, knowledge, or recklessness in order to convict him of aggravated criminal sexual assault.

Even though the information charging defendant with aggravated criminal sexual assault alleged he committed that offense by "knowingly" committing an act of sexual penetration upon the victims, the following instructions relating to that charge were given to the jury

over defendant's objection:

"A person commits the offense of aggravated criminal sexual assault when he:

- commits an act of sexual penetration with a victim; and
- was 17 years of age or older and the victim was under 13 years of age when the act was committed."

See IPI Criminal 2d No. 11.33, at 171-72 (Supp. 1989).

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

First: That the defendant committed an act of sexual penetration upon [L.A.H.]; and

Second: That the defendant was 17 years of age or older and that [L.A.H.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 2d No. 11.35, at 176-77 (Supp. 1989).

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

First: That the defendant committed an act of sexual penetration upon [A.M.]; and

Second: That the defendant was 17 years of age or older and that [A.M.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 2d No. 11.35, at 176-77 (Supp 1989).

"The term 'sexual penetration' means any contact, however slight, between the sex organ of one person and the mouth of another person, any intrusion, however slight, of any part of the body of one person into the sex organ of another person, including but not limited to cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration."

See IPI Criminal 2d No. 11.65, at 192 (Supp. 1989).

"A person commits the offense of aggravated criminal sexual abuse when he is 17 years of age or older and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed."

See IPI Criminal 2d No. 11.38, at 181-83 (Supp. 1989).

"To sustain the charge of aggravated criminal sexual abuse, the State must prove the following propositions:

First: That the defendant committed an act of sexual conduct with [L.A.H.]; and

Second: That the defendant was 17 years of age or older; and

Third: That [L.A.H.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 2d No. 11.40, at 186-87 (Supp. 1989).

"The term 'sexual conduct' means any intentional or knowing touching or fondling by the accused, either directly or through the clothing, of any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused."

See IPI Criminal 2d No. 11.64, at 192 (Supp. 1989).

Defense counsel objected to all of the aggravated criminal sexual assault instructions (IPI Criminal 2d No. 11.35, at 176-77 (Supp. 1989)) on the ground that they failed to include an element of the offense, namely, that the defendant had acted "knowingly." The court overruled the objection. Defendant preserved the issue by including it in his motion for a new trial, which the trial court denied.

On appeal, defendant concedes that the definition of aggravated criminal sexual assault, as set forth in section 12—14 of the Code, contains no specific mental state (Ill. Rev. Stat. 1987, ch. 38, par. 12—14). He argues, however, that sections 4—3 and 4—9 of the Code (Ill. Rev. Stat. 1987, ch. 38, pars. 4—3, 4—9), when read in conjunction, require that a mental state of acting intentionally, knowingly, or recklessly must be alleged and proved when aggravated criminal sexual assault is charged.

Section 4—3 of the Code, *inter alia*, states the following:

"(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7.

(b) *** If the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4—4, 4—5 or 4—6 is applicable." (Ill. Rev. Stat. 1987, ch. 38, pars. 4—3(a), (b).)

Sections 4—4 through 4—7 of the Code contain provisions pertaining to intent (Ill. Rev. Stat. 1987, ch. 38, par. 4—4), knowledge (Ill. Rev. Stat. 1987, ch. 38, par. 4—5), recklessness (Ill. Rev. Stat. 1987, ch. 38, par. 4—6), and negligence (Ill. Rev. Stat. 1987, ch. 38, par. 4—7).

Section 4—9 of the Code reads as follows:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." Ill. Rev. Stat. 1987, ch. 38, par. 4—9.

The majority opinion specifically acknowledges that aggravated criminal sexual assault is not a misdemeanor (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)), and that the statute defining that offense does not "clearly [indicate] a legislative purpose to impose absolute liability for the conduct described." (Ill. Rev. Stat. 1987, ch. 38, par. 4—9.) Given these facts and the recent supreme court decision in *Terrell*, I believe that defendant's argument is correct.

In *Terrell*, the supreme court construed the foregoing sections of the Code in the context of an aggravated criminal sexual assault case and stated the following:

"The defendant argues that the aggravated criminal sexual assault statute *** does not require an unlawful purpose on the part of the person who commits an act of sexual penetration and, therefore, punishes innocent as well as culpable conduct. The defendant maintains that it is unreasonable and arbitrary for the legislature to punish offenses based upon an act of sexual penetration, which requires no mental state, more severely than offenses based upon an act of sexual conduct, which requires a mental state. The defendant contends that the aggravated criminal sexual assault statute therefore violates due process.

The State argues that the defendant has waived this issue by failing earlier to challenge the constitutional validity of section 12—14. The defendant responds that the issue is reviewable under the plain error rule. Because we find no merit in the defendant's contentions, we need not consider whether the defendant is barred from raising them in this appeal.

In *People v. Burmeister* (1986), 147 Ill. App. 3d 218[, 497 N.E.2d 1212], the court considered and convincingly rejected a similar challenge to the constitutionality of the aggravated criminal sexual assault statute. Although the definition of 'sexual penetration,' unlike the definition of 'sexual conduct,' does not expressly require a mental state, *the legislature clearly did not intend the aggravated criminal sexual assault statute to define a strict liability or public welfare offense.* (Ill. Rev. Stat. 1985, ch. 38, par. 4—9.) *Accordingly, a mental state of either intent or knowledge implicitly is required for sexual penetration to occur.* (Ill. Rev. Stat. 1985, ch. 38, pars. 4—3, 4—4, 4—5, 4—6, 4—9.) So construed, the aggravated criminal sexual assault statute does not punish innocent conduct or set up an unconstitutional anomaly between the greater offense of aggravated criminal sexual assault and the lesser offense of aggravated criminal sexual abuse. (*People v. Burmeister* (1986), 147 Ill. App. 3d 218, 224[, 497 N.E.2d 1212].) *Rather, both aggravated criminal sexual assault and the lesser offense of aggravated criminal sexual abuse require an intentional or knowing act by the accused.*" (Emphasis added.) *Terrell*, 132 Ill. 2d at 208-09, 547 N.E.2d at 158.

The majority opinion recognizes that in the above language, the supreme court is "pointing out that section 4—3(a) of the Code made intent, or knowledge, the mental state for aggravated criminal sexual assault." (201 Ill. App. 3d at 119.) The majority opinion nevertheless rejects defendant's argument by drawing a distinction between (1) those offenses which have their "mental states set forth in very specific language" in the statutes defining them, and (2) those offenses for which mental states are implied by section 4—3 of the Code. (201 Ill. App. 3d at 121.) I do not agree that this distinction is valid under Illinois law.

The inquiry before this court is the following: What answer does the supreme court's authoritative construction of the aggravated criminal sexual assault statute as containing a mental state require on the questions of (1) does the State need to charge that mental state, and (2) does the court need to instruct on that mental state? I believe

that the answer required by *Terrell* to both of these questions is clearly yes.

My analysis may be summed up as follows: When the supreme court has authoritatively construed a statute as containing one of the mental states of intent, knowledge, or recklessness, then that mental state is present in the statute in question *to the same extent* as if the legislature had originally written in the words "intentionally," "knowingly," or "recklessly."

Certainly no citation of authority is needed for the proposition that mental states, as set forth in statutory definitions provided by the legislature, must be included in instructions given to the jury. Any court would think it most odd if some burglary case went to trial and, over the objection of the defendant, the court struck the word "knowingly" from the instructions describing how the defendant entered the building in question. (IPI Criminal 2d No. 14.06, at 312 (2d ed. 1981).) This court would have no difficulty reversing that conviction and telling the trial judge to include the mental state in the instruction.

My point is that there is absolutely no difference between statute A, which contains a mental state written into it by the legislature, and statute B, which contains three alternative mental states under section 4—9 of the Code, as "written" into it by an authoritative construction of the supreme court. I do not understand how Illinois law permits a principled distinction between these hypothetical statutes to be drawn.

I also do not agree with the majority opinion's efforts to resurrect the notions of "general intent" and "specific intent." As Professor Wayne LaFave has observed in his treatise on criminal law, "greater clarity could be accomplished by abandoning the 'specific intent'—'general intent' terminology, and this has been done in the Model Penal Code." (W. LaFave & A. Scott, Substantive Criminal Law §3.5(e), at 316 (1986).) The drafters of the Model Penal Code abandoned this terminology because "the concept of 'general intent' *** has been such an abiding source of confusion and ambiguity in the penal law." Model Penal Code §2.02, Comment, at 231 n.3 (1985).

In a recent article, Professor Timothy O'Neill points out that in an effort to rid Illinois of the confusing distinction between "general intent" and "specific intent," the Illinois legislature followed the suggestions of the Model Penal Code when the Criminal Code of 1961 was enacted. (O'Neill, *Illinois' Latest Version of the Defense of Voluntary Intoxication: Is It Wise? Is It Constitutional?* 39 De Paul L. Rev. 15, 24-25 (1989) (hereinafter O'Neill).) Yet, regrettably the distinction lives on because of the courts' reluctance to give it up.

O'Neill, 39 DePaul L. Rev. at 26-29.

In my judgment, the distinction between "general intent" and "specific intent" is to the substantive criminal law what *res gestae* is to the law of evidence: both archaic relics, purporting to convey meaning, but in fact conveying none. Calling the term *"res gestae"* nonsense, Professor Michael H. Graham writes that, "Nothing short of complete abandonment of *res gestae* as an explanation of admissibility permits rational analysis of exceptions [to] the hearsay rule \*\*\*." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.2, at 549 (4th ed. 1984).) I suggest that nothing short of complete abandonment of the "general intent"—"specific intent" distinction permits rational analysis of the law regarding the mental states applicable to various offenses.

I further disagree with the majority opinion that the decisions of the supreme court in *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, and *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244, add anything to the analysis of the issue before us. Those cases both dealt with the charge of armed robbery under section 18—2 of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), a charge that has as an element thereof the use of force or the threat to imminently use force. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—1(a), 18—2(a).) I believe that the presence of this element involving force is a sufficient basis to distinguish those cases from the present one.

I do not believe *Terrell* can be distinguished from the present case on the ground that the supreme court in *Terrell* was not addressing any issue regarding jury instructions. Of course the supreme court did not address that issue; no such issue was raised for it to address. Here, the issue was appropriately raised and preserved at the trial level.

Because, in my judgment, the supreme court's decision in *Terrell* compels the reversal in the present case, we need not and cannot concern ourselves with the effects of that reversal upon other cases either yet to be tried or pending appeal.