No. 2--06--0485     Filed: 2-13-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CM--2556 |
| CHARLES E. ROBINSON, | ) ) ) | Honorable James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

MODIFIED ON DENIAL OF REHEARING

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial in the circuit court of Kane County, defendant, Charles E. Robinson, was found guilty of domestic battery (720 ILCS 5/12--3.2(a)(2) (West 2004)) and sentenced to a two-year term of conditional discharge. He argues on appeal that his conviction was based on improperly admitted hearsay and that the State failed to prove his guilt beyond a reasonable doubt. We affirm.

The record on appeal contains a bystander's report of the bench trial, at which the sole witness was Lyle Nettles, the Aurora police officer who arrested defendant. Nettles testified that on April 30, 2005, he was dispatched to an apartment in Aurora in response to a report of a domestic disturbance. When he arrived, he spoke with Travisa Conner, who was crying and appeared to be very upset. Nettles observed that a hole had been punched in one of the walls of the apartment. He

also saw a shattered mirror and broken glass from a sliding door. Blood was spattered in the apartment. Nettles encountered defendant at the apartment. Defendant "was irrational, was yelling, screaming and acting out of control." In addition, defendant's right hand was bleeding heavily. He was taken to the hospital, where he was treated for a broken hand. Nettles asked Conner what had happened. Nettles testified, over defendant's hearsay objection, that Conner responded, "[M]y boyfriend punched me in the cheek area, Mr. Robinson is my boyfriend, my boyfriend flipped out." Nettles did not observe any injuries to Conner. Conner refused to sign a complaint, and no photographs of her were taken. Although Conner was under subpoena to appear at trial, she failed to do so.

Defendant argues that Conner's out-of-court statement to Nettles was hearsay and that, contrary to the trial court's ruling, the statement was not admissible under the "excited utterance" exception to the hearsay rule. Defendant alternatively argues that regardless of whether the statement was admissible, the State failed to prove his guilt beyond a reasonable doubt.

It cannot be gainsaid that Conner's statement to Nettles was hearsay. "Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within a recognized exception." People v. Cloutier, 178 Ill. 2d 141, 154 (1997). At issue here is whether the evidence was admissible under the "excited utterance" exception to the hearsay rule. As this court has recently noted:

"Three factors have been deemed necessary to lay the foundation for the admission of a statement under the excited utterance exception to the hearsay rule. [Citation.] They are: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) an absence of time to fabricate; and (3) a relation of the statement to the

circumstances of the occurrence. [Citation.] In determining whether a hearsay statement is admissible under this exception, courts use a totality of the circumstances analysis. [Citation.] 'This analysis involves the consideration of several factors, including time, "the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest." ' [Citations.] No one factor is determinative, as each case must rest on its own facts. [Citation.] Whether a statement qualifies as an excited utterance is within the trial court's discretion." People v. Gwinn, 366 Ill. App. 3d 501, 517 (2006).

The rationale for admitting an excited utterance has been explained as follows:

"'The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.'" People v. Damen, 28 Ill. 2d 464, 471 (1963), quoting Keefe v. State, 50 Ariz. 293, 297-98, 72 P.2d 425, 427 (1937).

"[T]he trial court's evidentiary ruling may not be reversed absent an abuse of discretion." People v. Richardson, 348 Ill. App. 3d 796, 801 (2004).

Defendant argues that a punch in the face that caused no physical injury is not a sufficiently startling event to produce a spontaneous, unreflecting statement. Defendant also contends that there

was no evidence of how much time elapsed from when Conner was punched to when she made her statement. Thus, defendant argues that the State did not establish the absence of time to fabricate. In addition, defendant maintains that in order to admit a statement as an excited utterance, the startling occurrence that produced the statement must be corroborated by independent evidence. See People v. Leonard, 83 Ill. 2d 411, 418 (1980).

The State responds, in part, that the startling event was not limited to the punch itself, but comprised defendant's ongoing violent outburst. We agree. Nettles observed firsthand the apparent results of the outburst: a hole punched in a wall, broken glass, spattered blood, and defendant's own bleeding hand. Nettles also observed defendant "yelling, screaming and acting out of control." Defendant's outburst qualifies as a startling occurrence for purposes of the excited utterance exception. The trial court could reasonably conclude that the outburst was sufficient to produce "a stress of nervous excitement" that would inhibit Conner's "reflective faculties." Given Conner's emotional state, the trial court could also reasonably conclude that she was under the influence of that stress when she spoke to Nettles and that she therefore lacked time to fabricate.

The third factor of the test for the admissibility of a statement as an excited utterance looks to the relationship between the statement and the startling event that is claimed to have produced it. Even though Conner did not state precisely when defendant punched her, her statement--when taken as a whole and viewed in light of the surrounding circumstances--strongly implies that defendant punched her contemporaneously with his outburst. We believe that defendant's outburst and Conner's statement are sufficiently connected to establish the relationship contemplated by the third factor of the test, but we also reemphasize that no single factor is determinative. Gwinn, 366 Ill. App. 3d at 517. The elements of the test "are taken as a whole, not as individual preconditions necessary to

establish the existence of the hearsay exception." (Emphasis in original.) People v. Smith, 152 Ill. 2d 229, 260 (1992). Looking at the evidence as a whole, we conclude that the trial court acted within its discretion in admitting Conner's statement.

The remaining issue is whether the State proved defendant guilty beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) People v. Collins, 106 Ill. 2d 237, 261 (1985), quoting Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Defendant first contends that battery is a specific intent crime and that the evidence does not establish that he acted with the requisite intent in striking Conner. According to defendant, it is more likely that any blow he struck was an accident that occurred while his behavior was out of control.

Initially, a few remarks are in order on defendant's characterization of battery as a specific intent crime. As defendant correctly observes, this court has referred to battery and aggravated battery as specific intent crimes on a number of occasions. See People v. Tross, 281 Ill. App. 3d 146, 150 (1996); People v. Russell, 234 Ill. App. 3d 684, 688 (1992); People v. Satterfield, 195 Ill. App. 3d 1087, 1095 (1990); People v. Baczkowski, 180 Ill. App. 3d 17, 21 (1989); People v. Leonard, 171 Ill. App. 3d 380, 390 (1988); People v. Taylor, 139 Ill. App. 3d 779, 782 (1985). On the other hand, several reported decisions from other appellate districts suggest that battery and aggravated battery do not require proof of a specific intent. See People v. Rodgers, 335 Ill. App. 3d 429, 433 (2002); People v. Burrage, 269 Ill. App. 3d 67, 73 (1994); People v. Brown, 250 Ill. App.

3d 767, 772 (1993); People v. Fox, 114 Ill. App. 3d 593, 596 (1983); People v. Hancock, 83 Ill. App. 3d 700, 704 (1980).

The conflict among these decisions may reflect inconsistency in what courts mean by "specific intent"--a concept that the General Assembly tried to eliminate when it enacted the Criminal Code of 1961 (Code) (720 ILCS 5/1--1 et seq. (2004)) (see People v. Burton, 201 Ill. App. 3d 116, 128 (1990) (Steigmann, J., concurring in part and dissenting in part)) and that has been called an "archaic relic[], purporting to convey meaning, but in fact conveying none" (Burton, 201 Ill. App. 3d at 129 (1990) (Steigmann, J., concurring in part and dissenting in part)). The term is sometimes used to refer simply to a mental state of knowledge or intent. That appears to be the way this court used the term in Satterfield and Taylor. Under another view, "specific intent" has essentially the same meaning as "intent." Compare People v. Garland, 254 Ill. App. 3d 827, 832 (1993) ("Specific intent exists where from the circumstances the offender must have subjectively desired the prohibited result") with 720 ILCS 5/4--4 (West 2004) ("A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct"). Under this view, a general intent exists when a prohibited result may reasonably be expected to follow from the defendant's voluntary act, and a general intent crime does not have any particular mental state as an essential element. Garland, 254 Ill. App. 3d at 832.

Unfortunately, these usages are out of step with the way the term "specific intent" has most commonly been used in American law: "to designate a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime." (Emphasis added.) 1 W. LaFave, Substantive Criminal Law §5.2(e), at 354 (2003). For example, "common law burglary

requires a breaking and entry into the dwelling of another, but in addition to the mental state connected with these acts it must also be established that the defendant acted 'with intent to commit a felony therein.' " 1 W. LaFave, Substantive Criminal Law §5.2(e), at 354 (2003). At least one Illinois decision expresses a similar view. See People v. Verkruysse, 261 Ill. App. 3d 972, 975 (1994) ("Generally, specific intent is made up of two elements: the criminal defendant must have (1) intended to engage in certain acts that constitute the actus reus and (2) performed those acts with an intended criminal result").

Our cases referring to battery as a specific intent crime are correct insofar as they hold that a knowing or intentional act is required. However, it is preferable to reserve the term "specific intent" for crimes that do not require merely a knowing or intentional act but that require proof of an additional special mental element. Battery, as charged here, does not fit this description. The actus reus of the crime is "mak[ing] physical contact of an insulting or provoking nature with an individual," and the mental element of the offense is that the offender performed the actus reus knowingly or intentionally. 720 ILCS 5/12--3(a)(2) (West 2004). There is no additional special mental element required. Therefore, battery predicated on physical contact of an insulting or provoking nature is not a "specific intent crime" according to the standard usage of the term.

Regardless of whether one calls battery a specific intent crime or a general intent crime, however, the criminality of defendant's conduct depends on whether he acted knowingly or intentionally, or whether his conduct was accidental. Determining whether the conduct was knowing or intentional, or was accidental, was the responsibility of the trier of fact.

In support of the argument that he struck Conner accidentally, defendant notes the lack of evidence that Conner suffered any injury. He points out that he used great force when punching the

wall, the mirror, and the glass door, and he asserts that he would likely have used commensurate force against Conner, had he actually punched her. This is a possible inference from the evidence, but it is no more than that. The trial court could rationally conclude that defendant acted knowingly or intentionally, but was able to resist using the same amount of force against Conner that he used against inanimate objects in the apartment.

Citing Jones v. United States, 231 F.2d 244 (D.C. Cir. 1956), defendant argues that his conviction may not be sustained based solely on an out-of-court statement admitted as an excited utterance.[1] In Jones, the defendant was convicted of taking indecent liberties with a child. The conviction rested upon hearsay statements by the child to her mother that she had been molested by a man in the laundry room of the building where she resided. The statements were not corroborated by evidence of bodily injury or any other physical evidence. The Jones court ruled that the statements, although properly admitted, were not sufficient to establish the corpus delicti. The court noted that the exception to the hearsay rule for spontaneous statements or declarations "has commonly been applied only where there has been independent evidence of an exciting event." Jones, 231 F.2d at 245, citing Brown v. United States, 152 F.2d 138, 140 (D.C. Cir. 1945). The Jones court also cited its decision in Smith v. United States, 215 F.2d 682 (D.C. Cir. 1954), where a conviction of taking indecent liberties with a child was reversed. As in Jones, the conviction in Smith was based on the hearsay statements of a child to her mother. The Smith court concluded that, under the facts

---

[1] We note that there was arguably some independent corroborative evidence to support defendant's conviction. Nettles testified that defendant was "irrational" and his hand bloody. These observations are consistent with Conner's hearsay statement. However, even assuming this evidence does not add credence to Conner's statement, we nevertheless reject defendant's argument.

presented, the statement was not spontaneous. Notably, however, the Smith court did not merely reverse the conviction, but also remanded the case for a new trial.

Although the Jones court indicated that the child's admissible statements were insufficient to establish the corpus delicti, the court rested its decision mainly on two decisions--Brown and Smith-- where the statements were inadmissible.[2] Indeed, as the Jones court appears to have drawn an analogy with Brown based on the absence in each case of independent evidence of the startling event, it is puzzling that Jones found that the child's statements were, in fact, admissible. Neither Brown nor Smith addressed the question of whether statements properly admitted as excited utterances can establish the corpus delicti. Inasmuch as Jones relies on those cases in support of its holding, we do not find its reasoning to be persuasive. Jones is also contrary to more recent authority rejecting the proposition that "a criminal conviction, secured exclusively on the basis of evidence admitted pursuant to a hearsay exception, can never be affirmed in the absence of independent corroborating evidence." Williams v. State, 714 So. 2d 462, 466 (Fla. App. 1997) (sustaining convictions based

---

[2]Jones also relied on another case, Dickey v. State, 147 Tex. Crim. 588, 183 S.W.2d 469 (1944), in which the court approved hearsay evidence of a child's statement that " 'a man played with her' " but nevertheless reversed the defendant's conviction because, according to the Jones court, "there was nothing shown to prove the mistreatment of the child." Jones, 231 F.2d at 246. However, the court in Dickey did not rest its decision on any requirement of proof of corpus delicti in addition to a hearsay statement but, rather, on the proposition that "the testimony *** [was] so indefinite and uncertain that it [did] not remove every reasonable doubt save that [the defendant] fondled [the alleged victim]." Dickey, 147 Tex. Crim. at 590, 183 S.W.2d at 470.

on out-of-court statements admitted as excited utterances even though the declarants' testimony at trial contradicted those statements).

Conner's statement was properly admitted as an excited utterance, and that statement was sufficient to establish the corpus delicti and sustain defendant's conviction.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BYRNE, P.J., and GROMETER, J., concur.