**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190074-U

Order filed July 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0074 Circuit No. 17-CF-1105 |
| | ) | |
| RIVAUGHN G. LEE, | ) ) | Honorable Daniel L. Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Lytton and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The State proved beyond a reasonable doubt that defendant acted with the requisite intent to support his attempted first degree murder conviction, and (2) counsel was not ineffective for failing to argue defendant should have been sentenced for a Class 1 felony.

¶ 2    Defendant, Rivaughn G. Lee, appeals his conviction for attempted first degree murder, arguing the State failed to prove the intent element of the charged offense beyond a reasonable doubt, and counsel provided ineffective assistance by failing to argue defendant should be

sentenced for attempted first degree murder as a Class 1 felony instead of a Class X felony. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) as a Class X felony, aggravated criminal sexual assault (*id.* § 11-1.30(a)(2)), criminal sexual assault (*id.* § 11-1.20(a)(1)), and aggravated battery (*id.* § 12-3(a)(2), (a)(5), (h)).

¶ 5        The evidence at a bench trial established that, on the morning of May 29, 2017, defendant and Athena Collier consumed alcohol together at defendant's residence. When defendant's girlfriend, Barbara Thompson, arrived, defendant and Collier began to argue. Collier left the living room and entered the kitchen.

¶ 6        Collier testified that, as the argument continued, defendant entered the kitchen and hit her in the face. Collier grabbed a knife to defend herself and fled to the bathroom. While in the bathroom, Collier overheard defendant say, "I am going to kill this bitch." Defendant broke down the bathroom door and began to choke Collier with one hand while repeatedly punching her in the face with his other hand. As defendant choked and hit her, Collier lost consciousness.

¶ 7        Defendant dragged Collier into the living room and splashed water on her to revive her. Collier testified that she awoke on her back with defendant on top of her, penetrating her vagina with his penis. Defendant choked Collier, and Collier attempted to push defendant off of her. Defendant once again punched Collier in the face. Collier saw a fork on the floor next to her, grabbed it, and jabbed it in defendant's face. Defendant continued to hit Collier until she lost consciousness. Collier awoke in the hospital. A toxicology report prepared at the hospital showed that Collier's blood alcohol content (BAC) was 0.212.

¶ 8        Thompson testified that defendant did not hit Collier before Collier retrieved the knife. According to Thompson, Collier picked up the knife without any prompting, and the physical altercation between Collier and defendant began after defendant tried to take the knife away from Collier. Thompson denied that defendant shouted obscenities at Collier while she was in the bathroom, or that defendant punched Collier during their scuffle in the bathroom. Thompson affirmed that when the altercation moved from the bathroom to the living room, defendant was on top of Collier, repeatedly punching her in the face and saying, "I will kill you" or "I should kill you." However, Thompson said defendant neither choked Collier nor had any sexual contact with her.

¶ 9        Thompson called 911 after failing to pull defendant off of Collier. In her statement to law enforcement, Thompson said that defendant also stood on the back of Collier's neck and stomped on her ribs and chest. At trial, Thompson denied making these statements.

¶ 10       Sergeant Maria Bautista of the Steger Police Department testified that she was dispatched to defendant's apartment. There, Bautista observed Collier lying in a pool of blood with defendant leaning over Collier, shouting "wake up, wake up." Collier seemed to regain consciousness, and Bautista attempted to speak with her but could not understand what she was saying. After an ambulance arrived to take Collier to the hospital, Bautista questioned defendant. Defendant spoke in a slurred manner and swayed back and forth, such that he appeared to be "highly intoxicated." Bautista observed a nearly empty vodka bottle by defendant's couch and asked if defendant drank it. Defendant answered, "[Y]es, I had that and then some." The record contains no evidence of defendant's BAC. Defendant told Bautista, "I am going to kill that bitch, I hope she fucking dies." Throughout their interaction, defendant repeated the phrase "I'm going to kill that bitch" multiple times.

3

¶ 11    Dr. Jane Lee, an expert in the field of emergency medicine, testified that she evaluated Collier, who suffered an intercranial hemorrhage and facial fractures. Lee characterized Collier's injuries as "serious" and determined they "require[d] operative treatment."

¶ 12    Kelly Krajnik of the Illinois State Police testified that she was a forensic scientist who specialized in biology and DNA analysis. Krajnik analyzed the sexual assault kit conducted on Collier. While most of the samples provided no DNA profile or a partial profile that was unsuitable for comparison, Krajnik was able to exclude defendant as the contributing source of the samples that were suitable for comparison.

¶ 13    At the trial's conclusion, the court found defendant guilty of attempted first degree murder and aggravated battery, but acquitted defendant of the aggravated criminal sexual assault and criminal sexual assault counts.

¶ 14    During sentencing, the court admonished defendant that he was subject to a Class X felony sentencing range of 6 to 30 years' imprisonment. Defense counsel did not object. The court sentenced defendant to 9½ years' imprisonment. Defendant appeals.

¶ 15                                                    II. ANALYSIS

¶ 16                                        A. Sufficiency of the Evidence

¶ 17    First, defendant argues the evidence was insufficient to prove beyond a reasonable doubt that he acted with specific intent to kill Collier.

¶ 18    "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson*

4

*v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact must "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. A reviewing court will not replace the trier of fact's judgment with its own regarding the weight of the evidence or witnesses' credibility. *Id.* "A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *Id.* ¶ 36.

¶ 19    To commit the offense of attempted first degree murder, a defendant must have "the criminal intent to kill." *People v. Williams*, 165 Ill. 2d 51, 64 (1995); 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016). Intent "can rarely be proved by direct evidence" because it is a state of mind. *Williams*, 165 Ill. 2d at 64. The Illinois Supreme Court has recognized that "where intent is not admitted by the defendant, it can be shown by surrounding circumstances [citation], including the character of the assault and the nature and seriousness of the injury." *Id.* The question of a defendant's intent is for the trier of fact 'and *** will not be disturbed on review unless the evidence is so improbable that there exists reasonable doubt as to the defendant's guilt.' " *People v. Cosby*, 305 Ill. App. 3d 211, 219 (1999) (quoting *People v. Ybarra*, 272 Ill. App. 3d 1008, 1011 (1995)).

¶ 20    The record shows that defendant twice choked Collier, struck her in the head and face repeatedly, stepped on her neck, and stomped on her ribs and chest. Additionally, defendant stated that he was going to kill Collier multiple times, both as he beat her and during his conversation with Bautista. Collier lost consciousness at least twice during the altercation, and Lee described Collier's injuries as "serious" and "requiring operative treatment." Moreover, while defendant showed some level of concern for Collier after the attack, that fact does not negate the overwhelming evidence that he intended to kill Collier in the moment. See *People v.*

5

*Schlott*, 2019 IL App (3d) 160281, ¶¶ 39-40. Viewing this evidence in the light most favorable to the State, a reasonable trier of fact could find that the State proved that defendant had the requisite intent for attempted first degree murder. See *Collins*, 106 Ill. 2d at 261.

¶ 21    Defendant asserts that his level of intoxication prevented him from forming the requisite intent. Nearly 20 years ago, the Illinois legislature amended the statute controlling intoxication defenses as follows: "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." 720 ILCS 5/6-3 (West 2018). In the wake of this change, several reviewing courts held that "Illinois no longer recognized voluntary intoxication as an excuse for criminal conduct." *People v. Jackson*, 362 Ill. App. 3d 1196, 1201 (2006); see *People v. Rodgers*, 335 Ill. App. 3d 429, 433 n.1 (2002); *People v. Slabon*, 2018 IL App (1st) 150149, ¶ 33. However, a defendant's voluntary intoxication "may be relevant in the commission of specific intent crimes, which 'require proof of an additional special mental element.' " *Slabon*, 2018 IL App (1st) 150149, ¶ 33 (quoting *People v. Robinson*, 379 Ill. App. 3d 679, 684 (2008)).

¶ 22    Ultimately, "[c]ourts have long recognized that 'where voluntary intoxication is so extreme as to suspend entirely the power of reasoning,' a defendant is incapable of forming a specific intent ***." *Id.* (quoting *People v. Cunningham*, 123 Ill. App. 2d 190, 209 (1970)); see *People v. Gutierrez*, 239 Ill. App. 3d 536, 541 (1992) ("The intoxication must be so extreme as to suspend *all* of the defendant's powers of reason." (Emphasis in original.)). Here, the evidence shows that defendant's intoxication did not rob him entirely of his reasoning powers, as he managed to break down the bathroom door when Collier fled from him, he splashed water on Collier's face to revive her after he knocked her unconscious, and he managed to communicate

6

effectively with Bautista at the scene after the ambulance transported Collier. Accordingly, defendant's voluntary intoxication defense fails.

¶ 23    Defendant also contends that Collier's level of intoxication affected her ability to recollect the events in question. However, the court impliedly found Collier's testimony that defendant choked and punched her multiple times to be credible. A circuit court is in the best position to make witness credibility determinations because it can observe witnesses' conduct and demeanor. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Because a reasonable trier of fact could accept Collier's testimony regarding defendant's battery of her as true beyond a reasonable doubt, we will not disturb the court's determination. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). For the foregoing reasons, the State proved defendant's guilt of attempted first degree murder beyond a reasonable doubt. See *Collins*, 106 Ill. 2d at 261.

¶ 24                           B. Ineffective Assistance of Counsel

¶ 25    Second, defendant argues counsel provided ineffective assistance where he failed to pursue a Class 1 felony sentence by arguing that the physical altercation fell under section 8-4(c)(1)(E) of the Code.

¶ 26    To determine whether counsel provided effective assistance, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29. To prevail on such a claim, "a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. "[A] defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both

prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35. We review *de novo* whether defendant received ineffective assistance of counsel. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 27 Section 8-4(c)(1)(E) of the Code provides that a defendant found guilty of attempted first degree murder may be sentenced as a Class 1 offender, rather than as a Class X offender, where he proves by a preponderance of the evidence that he "was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill." 720 ILCS 5/8-4(c)(1)(E) (West 2016). If sentenced as a Class 1 offense, defendant would have faced a sentence range of 4 to 15 years' imprisonment. 730 ILCS 5/5-4.5-30(a) (West 2016). Instead, as a Class X offense, defendant faced a sentence range of 6 to 30 years' imprisonment. *Id.* § 5-4.5-25. Notably, defendant's sentence of 9½ years' imprisonment falls within either range.

¶ 28 We find that counsel's performance was not deficient, as section 8-4(c)(1)(E) of the Code does not apply to defendant's actions. Serious provocation is "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9-2(b) (West 2016). The serious provocation standard is rooted in statutory language describing second degree murder. See *id.* § 9-2(a)(1); *People v. Lauderdale*, 2012 IL App (1st) 100939, ¶¶ 23-24. Recognized examples of serious provocation include substantial injury or assault, illegal arrest, adultery with the offender's spouse, and mutual quarrel or combat. See *People v. Garcia*, 165 Ill. 2d 409, 429 (1995). While the instant case does not fall into any of those categories, it most closely resembles a mutual quarrel or combat, which is "a fight or struggle which both parties enter willingly or

where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms." *People v. Austin*, 133 Ill. 2d 118, 125 (1989).

¶ 29 The altercation between defendant and Collier was not a mutual quarrel or combat, as defendant instigated the physical nature of the fight, Collier demonstrated an unwillingness to engage in a physical fight by hiding in the bathroom, and the altercation was not a fight upon equal terms. See *id.* Because defendant did not resort to violence in response to serious provocation, section 8-4(c)(1)(E) does not apply. Therefore, counsel did not provide deficient performance by failing to raise such an argument, and defendant did not receive ineffective assistance of counsel.

¶ 30 III. CONCLUSION

¶ 31 The judgment of the circuit court of Will County is affirmed.

¶ 32 Affirmed.