No. 3--08--1027

Opinion filed January 4, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CM--2425 |
| PHILLIP CONNOLLY, | ) ) | Honorable Bennett J. Braun, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice Wright dissented, with opinion.

**OPINION**

After a jury trial, the defendant, Phillip Connolly, was convicted of domestic battery (720 ILCS 5/12--3.2(a)(2) (West 2006)) and endangering the life or health of a child (720 ILCS 5/12--21.6(a) (West 2006)). The trial court sentenced the defendant to 364 days' imprisonment. The defendant appealed, contending that his domestic battery conviction must be reversed and his endangering the life or health of a child conviction must be vacated because the trial court improperly admitted a hearsay statement of Melissa Connolly. We affirm.

FACTS

The charges against the defendant arose from an argument

between the defendant and his wife, Melissa, outside their home. The couple's neighbor, Dina Perritano, testified that she was sleeping on her couch after working all night when her son woke her up because the defendant and Melissa were arguing outside. Perritano went outside, and observed Melissa seated in the driver's seat of her vehicle and the defendant standing in the open doorway of the vehicle, holding their son on his hip. Perritano testified that the defendant and Melissa were screaming and yelling at each other, and Melissa threatened to call the police. Perritano returned to her home and telephoned the police. When she turned back toward the argument, the child was sitting in the middle of the two-lane street and the defendant was leaning over Melissa while screaming at her. Perritano estimated that the child was in the middle of the street for a few minutes. Perritano saw a car coming slowly down the street, but it came to a stop and the defendant picked up the child and left. Melissa remained in her vehicle until the police arrived. Perritano estimated that the police arrived a few minutes after the defendant left with the child. When the police officer arrived that day, he spoke separately to Melissa and then spoke to Perritano.

Jon Muehlbauer, a deputy with the Will County sheriff's department, testified he arrived at the scene within five to seven minutes after he was dispatched. He first spoke to Melissa, who appeared upset, agitated, and nervous upon his arrival. The defense objected to allowing Muehlbauer to testify

2

as to what Melissa told him, but the trial court overruled the objection, finding an adequate foundation, and allowed Melissa's statements to be admitted under the excited utterance exception to hearsay. Muehlbauer went on to testify that Melissa told him that the defendant pulled her out of her vehicle and battered her about the head. Melissa also told Muehlbauer that the defendant put the child down in the middle of the street. The deputy did not recall seeing injuries on Melissa. He then spoke to Perritano and the driver of the car that stopped. Muehlbauer attempted to locate the defendant, but could not find him. Muehlbauer located the child in a residence down the street and returned the child to his mother, Melissa. The State rested, and the defendant's motion for a directed verdict was denied.

Melissa testified for the defense. She stated that, at the time of the incident, their child was 19 months old. Melissa testified that she had an argument with the defendant, but that he did not strike her and he never set the child down. She testified that she was calm when she spoke to Muehlbauer about 10 minutes after the argument.

The defendant also testified. He denied putting the child in the street. He testified that he had an argument with Melissa, but he could not recall what it was about. He heard Perritano say that she was calling the police, but he did not run away with the child. According to the defendant, he was taking the child for a walk in his stroller.

3

The jury found the defendant guilty of both offenses, and the defendant's motion for a new trial was denied. At sentencing, the trial court noted that the defendant and Melissa were "two of the least believable witnesses [he] ever heard" in the two decades he had been licensed to practice law and sentenced the defendant to 364 days' imprisonment.

ANALYSIS

The defendant contends that the trial court abused its discretion by admitting Melissa's statements to the officer under the excited utterance exception to the hearsay rule. The defendant also contends that the admission of Melissa's statements violated the confrontation clause of the United States Constitution (U.S. Const., amend VI). The defendant argues that if Melissa's out-of-court statements were improperly admitted by the court as an exception to the hearsay rule, double jeopardy bars his retrial for domestic battery.

The State contends the trial court properly admitted Melissa's responses to the officer's questions as an excited utterance. Alternatively, the State submits that even if an error occurred there is no double jeopardy bar to a retrial on these charges.

We begin by considering the defendant's argument that Melissa's statements constituted inadmissible hearsay. Out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay and considered to lack

4

reliability unless an exception applies. *People v. Tenney*, 205 Ill. 2d 411 (2002).

The State offered Melissa's out-of-court statements to the jury for the truth of the matters asserted, so her statements were hearsay unless an exception applied. The trial court found that the excited utterance, or spontaneous declaration, exception applied, and it admitted the statements.

Our supreme court has explained that the excited utterance exception to the hearsay rule was based on human experience. That is, where people are under physical or mental shock, they experience a stress of nervous excitement which produces a statement that expresses the real belief of the speaker as to the facts just observed. *People v. Damen*, 28 Ill. 2d 464 (1963).[1] It is not unusual for the State to attempt to utilize the excited utterance exception when appropriate. See*, e.g.*, *People v. Gwinn*, 366 Ill. App. 3d 501 (2006); *People v. Robinson*, 379 Ill. App. 3d 679 (2008), *appeal allowed*, 228 Ill. 2d 548 (2008).

---

[1]This excited utterance exception has a long history in the common law of evidence. See *Thompson v. Trevanion*, (1693) Skin. 402, 90 Eng. Rep. 179 (K.B.) (in an action for trespass of the wife of the plaintiff, Chief Justice Holt found that what the wife said immediately upon the hurt received, and before there was time to contrive anything, might be given in evidence); see generally 6 J. Wigmore, Evidence §§1747-50 (Chadbourn rev. ed. 1976).

5

Given the studied psychological dynamics of domestic violence (see generally M. Dutton, *Understanding Women's Responses to Domestic Violence: A Redefinition of Battered Woman Syndrome*, 21 Hofstra L. Rev. 1191 (1993)), efforts by the State to rely on the hearsay exception might arise from the recognition that domestic violence is a type of crime that is very susceptible to intimidation of the victim to ensure the victim does not testify against the abuser. See *People v. Dabbs*, No. 109698 (Nov. 18, 2010) (discussing the legitimate concern of the General Assembly with the effective prosecution of crimes of domestic violence).

For the excited utterance exception to the hearsay rule to apply, "there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). Courts look at the totality of the circumstances to determine whether a statement is admissible under the excited utterance exception. *People v. Williams*, 193 Ill. 2d 306 (2000). An event can be sufficiently startling, even in the absence of physical injury, based on the totality of the circumstances. *Robinson*, 379 Ill. App. 3d 679.

While the amount of time necessary for fabrication may vary greatly, the critical inquiry with regard to time is whether the statement was made while the declarant was still affected by the excitement of the event. *Sutton*, 233 Ill. 2d 89. The time

6

factor is not viewed in isolation, but in the context of the event. For example, a 15 to 20 minute delay between an incident of home invasion and aggravated domestic battery and the victim's statement to the police concerning the events does not destroy spontaneity under given circumstances. *Gwinn*, 366 Ill. App. 3d 501 (victim was crying, trembling, and visibly shaken, as well as injured, when she made the statement to officers).

The fact that a statement is made in response to an inquiry does not destroy spontaneity. *People v. Lisle*, 376 Ill. App. 3d 67 (2007), *appeal denied*, 226 Ill. 2d 598 (2007). In *Damen*, 28 Ill. 2d at 470, a forcible rape case, our supreme court noted the fact an officer asked the complainant "what happened" was insufficient to destroy its spontaneity. See also *Williams*, 193 Ill. 2d 306. In another case, when the statements are made in respect to a police officer's questions more than 20 minutes after the crime had occurred, the victim's statement was still considered a spontaneous declaration. *Sutton*, 233 Ill. 2d 89 (victim's statement made while excitement of the event predominated). An excited utterance can still be made even after having spoken previously to another after the event. See *People v. House*, 141 Ill. 2d 323 (1990) (rejecting the argument that a declarant cannot make a spontaneous declaration to a person after having spoken previously to another).

The trial court in the instant case determined that Melissa's statements were admissible as excited utterances, so our review is limited to whether that determination was an abuse

7

of discretion. *People v. Cookson*, 215 Ill. 2d 194 (2005).
Evidentiary rulings are within the sound discretion of the trial
court, and we review those rulings with deference to the trial
court. *People v. Caffey*, 205 Ill. 2d 52 (2001). This court will
find an abuse of discretion only where the trial court's ruling
is arbitrary, fanciful, unreasonable, or where no reasonable
person could take the view adopted by the trial court. *Caffey*,
205 Ill. 2d 52. Inasmuch as the application of the excited
utterance exception always depends on the circumstances of the
particular case, it has been suggested that the trial court
should be clothed with a reasonable degree of latitude. *Peterson
v. Cochran & McCluer Co.*, 308 Ill. App. 348 (1941); see 6 J.
Wigmore, Evidence §1750 (Chadbourn rev. ed. 1976).

In this case, the totality of the circumstances support the
trial court's finding that Melissa's statements were excited
utterances. Domestic violence is an intolerable offense
sufficiently startling to render inoperative the normal
reflective thought processes of the victim. Her statements were
made within a relatively short time span following the occurrence
that allowed the emotional upset to continue. There does not
appear to have been any time for reflection by Melissa prior to
her statements to the police officer. Muehlbauer arrived on the
scene within minutes of the argument between Melissa and the
defendant. Melissa was still at the scene in a nervous, upset,
and agitated condition, directly related to the event. Her child
was absent. The defendant was no longer at the scene, and he had

8

taken the child. Muehlbauer left Melissa at the scene to look for the defendant and the child. We find no abuse of discretion in the conclusion that Melissa's responses to police questioning on the scene were excited utterances and were admissible.

Having determined that Melissa's statements to Muehlbauer were admissible as exceptions to hearsay, we must address the constitutional issue based on the confrontation clause. Melissa did not testify for the State, so she was not subject to cross-examination for purposes of the sixth amendment confrontation clause. See *Melendez-Diaz v. Massachusetts*, __ U.S. __, 129 S. Ct. 2527 (2009) (confrontation clause imposes a burden on the prosecution, not the defendant, to produce witnesses against the defendant).

The confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him[.]" U.S. Const., amends. VI, XIV. A testimonial out-of-court statement by a witness who does not testify at trial is not admissible unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36 (2004); *People v. Stechly*, 225 Ill. 2d 246 (2007). The confrontation clause does not apply, however, if the statements are not testimonial. *Stechly*, 225 Ill. 2d 246.

The trial court found that Melissa's statements were not testimonial and, thus, did not violate the confrontation clause with their admission into evidence. A sixth amendment

9

confrontation clause violation claim is a question of law that we review *de novo*. *People v. Williams*, 238 Ill. 2d 125 (2010); *People v. Lovejoy*, 235 Ill. 2d 97 (2009).

A statement is testimonial if it is made in a solemn fashion and is intended to establish a particular fact. *Stechly*, 225 Ill. 2d 246. However, just because a statement was made to a police officer, standing alone, does not mean the statement is prohibited. A statement made to a law enforcement official is not testimonial when the circumstances objectively indicate that the primary purpose of any questioning was to address an ongoing emergency. *Sutton*, 233 Ill. 2d 89. The *Davis* court applied four factors when deciding whether interrogation was to meet an ongoing emergency: whether the purpose was to determine a past fact or ascertain an ongoing event; whether the situation could be described as an emergency; whether the nature of the questions focused on the present or on the past; and finally, the level of formality involved. *Davis v. Washington*, 547 U.S. 813 (2006). In such circumstances, the objective intent of the questioner, not the questioner's status, becomes the determinative question. *In re Rolandis G.*, 232 Ill. 2d 13 (2008).

Muehlbauer testified that when he arrived at the scene, Melissa was still at the scene and she appeared upset, nervous, and agitated. He first talked to Melissa. She told him that the defendant had pulled her out of her vehicle and battered her about the head, and that the defendant had set the child in the middle of the street. The defendant had also taken the child.

10

After questioning the two other witnesses at the scene, assessing the ongoing situation, Muehlbauer proceeded to try to locate the defendant and the child. In fact, he eventually located the child and then returned the child to his mother, Melissa. We conclude that Melissa's statements to Muehlbauer were nontestimonial because Muehlbauer was addressing an ongoing emergency. As such, the confrontation clause did not bar the admission of Melissa's statements. Having found Melissa's statements were an exception to the hearsay rule that did not violate the confrontation clause, we need not address the double jeopardy argument.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

JUSTICE WRIGHT, dissenting:

In this case, the couple's neighbor, Dina Perritano, testified that she observed defendant and Melissa screaming and yelling at each other outside their residence while Melissa was seated in the driver's seat of her vehicle. Perritano observed defendant was standing in the open doorway of the vehicle, holding their son on his hip. During this verbal argument, Perritano heard Melissa threaten to call the police. Perritano did not observe any physical contact between the couple but called the police on her own initiative. Perritano estimated that the police arrived a few minutes later after defendant left with his son.

11

Jon Muehlbauer, a deputy with the Will County sheriff's department, testified he arrived at the scene within five to seven minutes after he was dispatched to that location. He spoke to Melissa who told him that defendant pulled her out of her vehicle and battered her about the head. The officer described her to be upset and nervous.

For the excited utterance exception to the hearsay rule to apply, "there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). In this case, I conclude that the events witnessed by the neighbor do not indicate that there was a sufficiently startling event or the required spontaneity to trigger this narrow and inflexible exception to the hearsay rule.

Generally, many people who speak to investigating officers are both upset and nervous. The excited utterance requires something more, that is, a sufficiently startling event to trigger a spontaneous declaration. Mere nervousness and anxiety is not enough.

Here, the neighbor's testimony established that heated verbal altercations were not unusual for this couple and that the police officer arrived on the scene between 5 and 10 minutes after the couple separated. This time period would allow sufficient time for Melissa's personal reflection, thereby negating the spontaneity of her responses to the officer's questions. Based on the circumstances of this case, it is unclear whether Melissa was upset because her child had been removed from the area by his father or upset by the purported altercation.

In my view, the foundation for an excited utterance exception should not vary due to the domestic nature of the underlying offense or based on the reality that the State cannot prove their

12

case without the statement. In this case, the State's evidence neither satisfied the requirement that the occurrence in this case was startling for this declarant and also failed to establish there was not an opportunity for the declarant's reflection. Thus, I have reached the conclusion that Melissa's out-of-court statement to Muehlbauer constituted inadmissible hearsay and requires reversal of defendant's conviction.

Next, based on my position as set forth above, I reject defendant's contention that a retrial for domestic battery is barred based upon double jeopardy considerations. Double jeopardy does not prevent a retrial, when a conviction is overturned due to an error in the trial. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). When deciding if the evidence was sufficient to sustain a conviction, for double jeopardy purposes, this court may consider all of the evidence admitted at trial, even the erroneously admitted evidence. If viewing all the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt, there is no double jeopardy bar to retrial. *People v. Lopez*, 229 Ill. 2d at 367.

In this case, Melissa told the police officer that defendant had pulled her out of the car and battered her about the head. Moreover, upon remand, Melissa could change her mind and elect to testify for the State in a fashion that is consistent with her out-of-court statements to the officer. Viewing all of the evidence, including the improperly admitted evidence, I conclude that a reasonable trier of fact could have found defendant guilty of domestic battery.

As for defendant's conviction of endangering the life or health of a child, the State contends that retrial is not warranted because any error was harmless. Although there was sufficient evidence to sustain the conviction, the impact of the erroneous admission of Melissa's

statements to the officer cannot be considered harmless in this case.  See *People v. Stechly*, 225 Ill. 2d 246 (2007).

Consequently, I would find the trial court abused its discretion by admitting the out-of-court statement as a spontaneous utterance, vacate both convictions, and remand the cause for a new trial on both charges.

For the foregoing reasons, I respectfully dissent.