**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240394-U

Order filed May 7, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0394 Circuit No. 22-DV-172 |
| ROMAN WALTER SMOLARCZYK, | ) ) ) | Honorable Arkadiusz Z. Smigielski, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) Defendant forfeited his claim that the court misapplied the law regarding ejection from a residence. (2) Admittance of a hearsay statement under the excited utterance exception was not an abuse of discretion.

¶ 2    Defendant, Roman Walter Smolarczyk, appeals his conviction for domestic battery. Defendant argues that the Will County circuit court committed reversible error by (1) misapplying the law regarding ejection from a residence and (2) improperly admitting hearsay evidence. We affirm.

I. BACKGROUND

¶ 4     Defendant was charged by complaint with three counts of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)). The charges alleged that defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Jillian Smolarczyk, a family or household member. Count I alleged defendant grabbed Jillian about the arm, count II alleged defendant threw Jillian to the ground, and count III alleged defendant put his arm around Jillian's neck.

¶ 5     At a bench trial, Jillian testified that she and defendant were divorced and had one child together, B.S., who was three years old on March 27, 2022. On that date, Jillian arrived at defendant's residence at approximately 8:30 a.m. to drop off doughnuts for B.S. Jillian explained that it was normal for her to bring doughnuts to defendant's house when B.S. had overnight visits with defendant during his allocated parenting time. Jillian used her own set of keys to enter the residence, although she had moved out of the home a year earlier. Shortly after arriving, Jillian and defendant started arguing in the living room with B.S. present. When initially asked if defendant had told her leave, Jillian stated, "He—I don't remember exactly how it went down but he told me that, I believe, as he was lunging towards me. He never asked me to formally leave. No, he never asked me to leave." Jillian testified that defendant grabbed her arm and threw her to the ground. While on the ground, defendant wrapped his arm around Jillian's neck for approximately 10 seconds. Jillian testified that she could not breathe with defendant's arm around her neck. When defendant released Jillian, she grabbed B.S., who had been screaming during the altercation, and left the residence. Jillian called the police as she drove away in her vehicle and was instructed to park and wait for Deputy Adelheid Connolly several blocks away from

defendant's home. Jillian testified she left defendant's residence approximately 15 minutes after she had arrived.

¶ 6        On cross-examination, Jillian agreed that she told Connolly that defendant had told her to "get the fuck out." Jillian acknowledged that she did not leave but stated that defendant made the statement as he was "coming to make contact with her." When asked about the victim complaint form Connolly had given her to fill out immediately after the incident, Jillian acknowledged she had indicated on the form that she was not injured and had not mentioned that her breathing had been impeded when defendant put his arm around her neck.

¶ 7        Connolly testified that Jillian was in her vehicle with B.S. in the backseat when she arrived on the scene. Connolly stated that while speaking with Jillian, she heard B.S. say ''my daddy pulled on my mommy's neck." Defendant objected to B.S.'s statement as inadmissible hearsay. The State argued the statement was an excited utterance and the court overruled the objection. Connolly stated that she observed pink marks on Jillian's neck and upper chest that she documented with her body camera and in her written police report.

¶ 8        In the body camera video, Connolly approached Jillian's vehicle and asked her what happened. Before responding to Connolly, Jillian turns to speak to B.S. about B.S. not wearing pants as Jillian rolled down the rear window next to B.S. Once the window was partially down, Connolly asked B.S. how she was doing and B.S. responded, "my daddy pulled on my mommy's neck." B.S. was not in view of the camera when she made the statement and the time stamp on the video indicates the statement was made at 8:41 a.m. Jillian exited the vehicle and recounted the incident to Connolly, explaining that she and defendant had a bad divorce that was finalized in December. As Jillian spoke with Connolly, B.S. was partially visible through the vehicle window sitting in her car seat and appeared to be playing. Connolly examined Jillian's neck and commented

3

that there was a pink mark. No discernable mark is visible in the video. A few minutes later, Jillian reentered the vehicle to retrieve her identification, and B.S. can be heard asking about her new shoes. B.S. started crying after being told that the shoes were left at defendant's residence. Jillian reassured B.S. that they would get the shoes back and B.S. stopped crying. After Connolly asked Jillian if she wanted to press charges against defendant, she told Jillian "there's not really marks."

¶ 9      At the close of the State's case, defense counsel moved for a directed verdict, arguing that defendant was justified in his use of force in defense of his dwelling. The court denied the motion, and defendant subsequently testified. Defendant stated that on the morning of the incident, Jillian arrived at his residence unannounced. Once the argument between them started, he asked Jillian to leave seven times before grabbing her arm. Defendant stated Jillian pulled away and he released her because he didn't want B.S. "screaming with her mommy and daddy having a tug of war." Jillian fell to the ground when defendant released her arm. Defendant denied grabbing Jillian around her neck.

¶ 10     The court found defendant not guilty of two counts of domestic battery as it related to grabbing Jillian's arm and throwing her to the ground. The court found that Jillian's invitation had terminated when defendant told her to get out of the house and that it was reasonable for defendant to grab her by the arm to lead her to the door. Further, the court was unable to determine beyond a reasonable doubt based on the evidence if Jillian was thrown to the ground or if she fell to the ground.

¶ 11     In finding defendant guilty of domestic battery by putting his arm around Jillian's neck, the court stated,

> "I cannot in any circumstance fathom a scenario where grabbing somebody by the
> neck would be reasonable to escort them out of the house.

4

*** I do believe it happened. I believe that three-year-old more than I believe anybody else in this courtroom. He touched mommy by the neck. This does not allege harm. This does not need to allege harm. Insulting or provoking, I don't find it reasonable to grab somebody by, around or near the neck in an effort to escort them out of the home."

¶ 12 During a hearing on defendant's posttrial motion to reconsider, defense counsel solely argued B.S.'s statement was improperly admitted as an excited utterance and estimated that the lapse in time between Jillian leaving the residence and B.S.'s statement was 10 to 15 minutes. In denying the motion, the court indicated that B.S.'s statement was "the single largest piece of evidence" and that it weighed heavily in determining defendant's guilt.

¶ 13 Defendant subsequently filed a motion for a new trial, reiterating his assertion that the admission of B.S.'s statement was erroneous. The court denied defendant's motion.

¶ 14 II. ANALYSIS

¶ 15 A. Defense of Dwelling

¶ 16 On appeal, defendant first argues that the court misapplied the law regarding ejection from a residence because it erroneously used a "reasonable force" standard in its consideration of his affirmative defense of defense of dwelling. However, defendant did not raise this alleged error at trial or in his posttrial motions. Accordingly, defendant has forfeited this claim due to his failure to properly preserve it for review. See *People v. Salamon*, 2022 IL 125722, ¶ 56. Defendant has not argued for plain error review nor provided us with any reason to excuse this forfeiture.

¶ 17 We note that while defendant makes passing references to the sufficiency of the evidence regarding the court's alleged error, he does not actually argue that the evidence was insufficient to convict him, instead solely arguing that the court used the wrong standard. He has therefore

additionally forfeited any such contention. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 18                                        B. Admission of B.S.'s Statement

¶ 19            Defendant further argues that the court erred by improperly admitting B.S.'s hearsay statement as an excited utterance. Initially, the parties disagree as to the appropriate standard of review. The State asserts that the court's decision to admit evidence is subject to a deferential standard of review. Defendant asserts, however, that *de novo* review is warranted because the court's admission of a child's statement without an inquiry to guarantee its trustworthiness is an error of law. We disagree. Evidentiary rulings on the admissibility of hearsay testimony are reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). As an exception to the general rule of deference, *de novo* review of evidentiary rulings "applies in cases where a trial court's exercise of discretion has been frustrated by an erroneous rule of law." (Internal quotation marks omitted.) *Id.* In this case, the court exercised its discretion in finding the statement admissible based on the circumstances. The court was not required to conduct an inquiry because the trustworthiness of an excited utterance is derived from the unique circumstances under which the statement was made and not the declarant's competency. See *People v. Smith*, 152 Ill. 2d 229, 261 (1992). Accordingly, we review the issue for an abuse of discretion. Under this standard, a court's evidentiary rulings will not be disturbed unless it is so arbitrary, fanciful, or unreasonable that no reasonable person would adopt the view taken by the court. *People v. Connolly*, 406 Ill. App. 3d 1022, 1026 (2011).

¶ 20            Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible for lack of reliability unless an exception applies. See *id.* at 1024. As an exception to

the hearsay rule, an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Mar. 24, 2022). A hearsay statement is not admissible under the excited utterance exception unless the following conditions exist: "(1) there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) there must be an absence of time for the declarant to fabricate the statement; and (3) the statement must relate to the circumstances of the occurrence." *People v. Lisle*, 376 Ill. App. 3d 67, 77 (2007). Whether a statement is admissible as an excited utterance is based on the totality of the circumstances and relevant factors for admissibility include time, the nature of the event, the mental and physical condition of the declarant, the influence of intervening occurrences, and the presence or absence of self-interest. *People v. Van Scyoc*, 108 Ill. App. 3d 339, 341 (1982).

¶ 21　　　　Here, it is apparent that the altercation between her parents was a sufficiently startling occurrence for B.S., as both Jillian and defendant acknowledged that B.S. was screaming during the incident. Although it is unclear from the record exactly how much time elapsed, B.S. made her statement to Connolly within a matter of minutes after the altercation ended, while the excitement of the event still predominated. See *Smith*, 152 Ill. 2d at 259-60 (the 10-minute period between a startling event and a child's statement did not destroy its spontaneity as the proper inquiry is whether the statement was made while the excitement of the event predominated). B.S.'s statement clearly related to the circumstances of the event and the simplistic nature of the language B.S. used—describing that defendant "pulled" on her mother's neck—supports its reliability. See *People v. Nevitt*, 135 Ill. 2d 423, 445 (1990) (reliability of a statement is substantiated when the terminology used is consistent with language likely to be used by a child of declarant's age). Considering the totality of the circumstances, it was not unreasonable for the court to have found

7

that B.S.'s statement was credible. See *Connolly*, 406 Ill. App. 3d at 1026. Therefore, we conclude that the admission of B.S.'s statement as an excited utterance was not so arbitrary, fanciful, or unreasonable as to amount to an abuse of discretion.

¶ 22                                    III. CONCLUSION

¶ 23        The judgment of the circuit court of Will County is affirmed.

¶ 24        Affirmed.