NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250151-U

NO. 4-25-0151

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 11, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| KEVION MATAZ FIELDS, | ) | No. 22CF2423 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the victim's out-of-court statements to a
police officer were admissible under the excited utterance exception to the
hearsay rule and the statements were nontestimonial; thus, they did not violate the
confrontation clause (U.S. Const., amend. VI).

¶ 2        Defendant, Kevion Mataz Fields, was convicted of aggravated battery of a police

officer (720 ILCS 5/12-3.05(d)(4) (West 2022)) and domestic battery of Ondreas Edgeston

(*id.* § 12-3.2(a)(1)). On appeal, defendant challenges his conviction for domestic battery,

contending the trial court erred in admitting out-of-court statements made by Edgeston, which

were recorded on a police body-worn camera and a squad-car camera, as excited utterances.

Defendant contends (1) Edgeston's statements did not meet the requirements to be admitted

under the excited utterance exception to the hearsay rule and (2) her statements were testimonial

and, therefore, violated his right to cross-examine adverse witnesses under the confrontation

clause (U.S. Const., amend. VI). We affirm.

¶ 3                                      I. BACKGROUND

¶ 4          The charges in this case stem from an incident that occurred on September 30, 2022. While on patrol that evening, Rockford Police Officer Adam Dreger was flagged down by Edgeston, who was standing on the curb near her residence with her four young children and two dogs. Edgeston was visibly injured, and she and the children were upset and crying. Other Rockford police officers arrived at the scene and approached the residence while Officer Dreger continued speaking to Edgeston. Within minutes, defendant got into an altercation with the officers at the back of the residence, and he was eventually handcuffed and taken into custody.

¶ 5          The State filed a seven count indictment against defendant as follows: (1) aggravated domestic battery for injuring Edgeston, a household member, by strangulation (720 ILCS 5/12-3.3(a-5) (West 2022)) (count I); (2) aggravated battery of a peace officer for grabbing and holding Officer David Holzrichter (*id.* § 12-3.05(d)(4)) (count II); (3) aggravated battery of a peace officer for biting Officer Austin Jacobi (*id.*) (count III); (4) resisting or obstructing a peace officer for refusing the verbal commands to stop coming toward officers, then tensing and pulling away from Officer Joshua Fearnside, who suffered injury (*id.* § 31-1(a-7)) (count IV); (5) domestic battery for striking one of Edgeston's children, a family or household member (*id.* § 12-3.2(a)(2)) (count V); (6) domestic battery for striking Edgeston and causing her injury (*id.* § 12-3.2(a)(1)) (count VI); and (7) child endangerment for committing acts of physical violence in close proximity to Edgeston's four children so as to endanger one or all of the children (*id.* § 12C-5(a)(1)) (count VII).

¶ 6          Counts II, V, and VII were dismissed, and the case proceeded to a bench trial on the remaining counts. Prior to trial, the trial court addressed the State's motion *in limine* seeking

to admit Edgeston's statements recorded on Officer Dreger's body-worn camera and his squad-car camera pursuant to the excited utterance exception to the hearsay rule. See Ill. R. Evid. 803(2) (eff. Jan. 25, 2023). Defense counsel objected but declined the opportunity to hold a hearing on the matter before starting the trial. The court determined it would decide "after we go through the trial whether or not [her statements] will come in as an excited utterance."

¶ 7        Officer Dreger testified while on patrol on September 30, 2022, he was flagged down at approximately 8:02 p.m. by Edgeston. She was standing near the street outside her home with her four children and two dogs. Edgeston approached the passenger side of Officer Dreger's squad car. She was crying, appeared "disheveled," and was covered in leaves; the children were upset and crying; and the dogs appeared to be excited and were jumping near Edgeston. Officer Dreger observed the left side of Edgeston's face was red and swollen, her mouth was bleeding, and she had leaves and debris in her hair. Officer Dreger described her as being "very upset, almost terrified, and she was very scattered when she spoke." As they were talking, Officer Dreger instructed Edgeston to secure her dogs so he could exit his squad car to continue their conversation. Edgeston attempted to put the dogs into a vehicle parked in the driveway, but the dogs continued to run around and ran toward the officer. Eventually, Edgeston managed to gather the dogs, and then a man called them from the porch of the house, prompting the dogs to run inside. Officer Dreger testified he continued speaking to Edgeston while other officers arrived at the scene. Officer Dreger was advised there was an altercation occurring behind the residence involving the other officers, so he went to assist. He observed Officer Fearnside and Officer Holzrichter holding defendant on the ground and attempting to secure him. Defendant was yelling and was uncooperative with the officers' commands to stop resisting. Defendant was secured in handcuffs and taken into custody.

¶ 8    At this time, the State offered video footage from Officer Dreger's body-worn camera and squad-car camera into evidence. Defense counsel objected to the publication of this evidence, and further discussion was had regarding the State's motion *in limine*. The trial court stated, "I don't know if they're an excited utterance or not because I didn't see them, so I don't know if they'll be admitted for that purpose, but I'll watch them now." The videos were played, periodically being paused as Officer Dreger's direct examination continued.

¶ 9    Both videos show, from separate vantage points, Officer Dreger's involvement at the scene, which lasted approximately 10 minutes, from approximately 8:02 until 8:10 p.m. Officer Dreger's interactions with Edgeston, during which she made the statements, occurred during the first five minutes of the videos.

¶ 10    The videos showed Officer Dreger stopping his squad car outside the residence where Edgeston, two of her children, and her two dogs were standing on the curb, and two other children were walking up the sidewalk to join them. Edgeston and the children were visibly upset and crying, and Edgeston appeared to be trying to keep them all together. When the audio began, Officer Dreger asked, "Where'd he go?" and Edgeston exclaimed, "He's in the house. I got everything on record." Edgeston continued to cry loudly and stated, "He took my phone," and seemed to say, "I don't know if he deleted anything." One of the children yelled out, "Can you take us to the hospital?" Officer Dreger asked Edgeston if she could secure her dogs, and she replied, "I can try. He's in the house." The officer then immediately asked Edgeston what happened, and Edgeston continued sobbing and said something about drinking. Officer Dreger interrupted Edgeston to ask for the address of the residence, and she stated the address. Edgeston cried out again, and Officer Dreger asked her if she needed an ambulance. Still crying, she replied, "I think so he slammed me." Officer Dreger, still inside his patrol car, asked Edgeston

- 4 -

again if she could get control of her dogs, and she said she would try. Edgeston is observed with her kids trying to put the dogs in the car. The children and Edgeston continued to cry, and one child can be heard saying, "Daddy hit my mommy." Officer Dreger exited his car and began approaching the driveway. Edgeston can be heard pleading, "Please get in the car," and explaining to the children what she was trying to do. While standing at the end of the driveway, Officer Dreger yelled at Edgeston to put the dogs in the car, and the dogs then turned and ran toward him briefly. Officer Dreger yelled at Edgeston again to secure her dogs, and she yelled back at him that she was trying. At the same time, a man can be seen on the porch, and then the dogs ran to the porch and entered the house with the man.

¶ 11　　　　Edgeston repeated she tried to secure the dogs as instructed, but she explained her children were crying and "[she just got [her] a** beat." Officer Dreger offered to put the children, all of whom were crying loudly, in the back of his car. During this time, other officers arrived at the scene. Standing beside the squad car with the rear door open and her children sitting inside, Edgeston was visibly upset and holding the left side of her face. She repeated that she did try her best to get her dogs under control. When asked where she was hurt, she showed Officer Dreger the side of her face and said, "He hit me." Edgeston appeared to be breathing heavily and crying and was difficult to understand, but she repeated that defendant had "slammed" her while her children continued to cry loudly while seated in the squad car.

¶ 12　　　　Another officer asked Edgeston where defendant was, and Edgeston, visibly flustered, said he was in the car and then quickly corrected herself and said he was in the house. Edgeston continued to sob and said, "He accidently hit my daughter *** when he was trying to swing on me on the corner." When asked, Edgeston said defendant punched her and slammed her, and she did not think she lost consciousness. Edgeston continued to show Officer Dreger her

injuries. Officer Dreger asked Edgeston defendant's name, and she told the officer defendant's name and stated he told her he would never do this to her. Edgeston continued to cry, holding the injured side of her face with her hand. When asked how many times he hit her, Edgeston said, "He hit me a lot right there on the corner," pointing to the street corner. She then answered Officer Dreger's questions, stating her name, address, phone number, and place of employment and providing information about defendant. Officer Dreger took notes.

¶ 13     At approximately 8:07 p.m., just five minutes after arriving at the scene, Officer Dreger heard there was a disturbance involving officers at the back of the residence and ran to assist. His body-worn camera showed officers holding defendant on the ground, attempting to secure him, and defendant cursing and resisting. Officer Dreger assisted them in handcuffing defendant and securing him. Officer Dreger then returned to his patrol car, meeting Edgeston along the way and guiding her back to his car. Officer Dreger opened the back door of his patrol car to check on the children, and one of them asked, "Did my daddy die?" and Officer Dreger assured them defendant was fine and was talking to some other police officers.

¶ 14     The patrol car video continued to record the scene while Officer Dreger spoke with Edgeston near the side of his police vehicle. The children can be heard crying loudly while sitting in the back of the car. One can be heard saying, "My daddy beat my mommy up," and a female officer can be heard attempting to console them and telling them their mother was safe. Once Officer Dreger is seen running toward the back of the residence, several other officers, including the female officer consoling the children, follow him. The children remain alone in the back of the car, crying and screaming inconsolably.

¶ 15     After the videos were shown during Officer Dreger's testimony, defense counsel objected to the admission of the statements, arguing the State failed to establish that they met the

requirements to be admitted as excited utterances. The trial court granted the State's motion *in limine* and allowed the statements to be admitted.

¶ 16 The State presented the testimony of Rockford Police Officer Sarah Stinson, who testified she spoke with Edgeston at the scene and accompanied her to the hospital on the evening of the incident. She took photos of Edgeston's injuries, which were admitted into evidence. Samuel Csukor, a paramedic and firefighter with the Rockford Fire Department, testified that he treated Edgeston on the night of the incident. Edgeston complained of neck pain and stated she had been strangled, possibly to the point of losing consciousness, and she was placed in a C-collar. He observed bruising on her face, some blood in her mouth, and abrasions to her wrists and arms.

¶ 17 The State presented the testimony of Officer Jacobi, which we need not address as it is not pertinent to the issues raised in this appeal. Defendant did not present any evidence.

¶ 18 After hearing closing arguments, the trial court took the matter under advisement. Prior to issuing its decision, the court revisited the issue of the excited utterance evidence. The court stated it had re-reviewed the video footage and found "there was a chaotic situation that was going on at that time when the police officer arrived," noting the police were not called there but came upon the scene and were stopped by Edgeston, who was hysterical and crying along with her children. The court determined Edgeston was clearly still under the excitement and stress of an incident that had just occurred and her statements and those of the children qualified as exited utterances.

¶ 19 Counts II, V, and VII having already been dismissed, the trial court issued its decision as to the remaining counts. The court found the State failed to prove defendant guilty as to counts I (aggravated domestic battery by strangulation) and IV (resisting Officer Fearnside).

However, defendant was found guilty of count III (aggravated battery of Officer Jacobi) and count VI (domestic battery of Edgeston). Defendant's motion for a new trial was denied. Defendant was sentenced to two years of probation.

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, defendant argues the trial court erred in admitting and considering the statements made by Edgeston under the excited utterance exception to the hearsay rule because the statements were not excited utterances and the admission of this evidence violated defendant's constitutional right to confront adverse witnesses because he was not afforded an opportunity to cross-examine Edgeston. Although defendant made a contemporaneous objection to the admission of Edgeston's statements as excited utterances, he acknowledges he failed to properly preserve these issues for appeal by failing to raise the claims of error in his posttrial motion. He argues, however, that the issues should be reviewable as plain error.

¶ 23 It is well settled that to preserve an issue for appellate review, a defendant must make an objection to the purported error during the trial and raise it again in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Furthermore, "[c]atch-all arguments in post-trial motions do not preserve unspecified claims of error on appeal." (Internal quotation marks omitted.) *People v. Pace*, 225 Ill. App. 3d 415, 432 (1992). The failure to preserve an issue for appeal results in its forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48. Consequently, we may review these claims of error only if the defendant can establish plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 24 The plain error doctrine allows a reviewing court to consider a forfeited error affecting substantial rights in two circumstances:

"(1) when a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

Our first step in the plain error analysis is to determine whether any error occurred at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31 (citing *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010)). Making this determination requires a " 'substantive look' " at the purported error. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). If no error occurred, the principles of forfeiture apply. See *People v. Thompson*, 238 Ill. 2d 598, 613-15 (2010).

¶ 25　　　　　　　　A. Excited Utterance Exception to the Hearsay Rule

¶ 26　　　　　　Hearsay is an out-of-court statement offered to establish the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Such statements are generally inadmissible as evidence unless they fall into a specific exception. Ill. R. Evid. 802 (eff. Jan. 1, 2011). Illinois Rule of Evidence 803(2) (eff. Jan. 25, 2023), provides such exception to the hearsay rule for excited utterances. An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* Decisions to admit statements under the excited utterances exception to the hearsay rule, like other evidentiary rulings, rest within the sound discretion of the trial court. *People v. Connolly*, 406 Ill. App. 3d 1022, 1026 (2011). Such determinations will be reversed on

appeal "only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person could take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 27 Admission of a statement under the excited utterance exception to the hearsay rule requires the trial court to find "(1) there was an 'occurrence sufficiently startling to produce a spontaneous and unreflecting statement,' (2) the declarant lacked time to fabricate the statement, and (3) the declarant's statement relates to the circumstances of the startling occurrence." *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 31 (quoting *People v. Sutton*, 233 Ill. 2d 89, 107 (2009)). The application of the excited utterance exception requires the trial court to consider the totality of the circumstances, which includes "time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Sutton*, 233 Ill. 2d at 107. The "critical inquiry" regarding the impact of the passage of time on the admissibility of a statement as an excited utterance is "whether the statement was made while the excitement of the event predominated." (Internal quotation marks omitted.) *Kinnerson*, 2020 IL App (4th) 170650, ¶ 32. Furthermore, "spontaneity is not necessarily destroyed by either the fact that a declarant's statement is made after having spoken previously to another or the fact that a statement was made in response to a question." *Id.*

¶ 28 In this case, the totality of the circumstances supports the trial court's finding that Edgeston's statements were excited utterances. The video from Officer Dreger's squad car and his body-worn camera showed Edgeston flagging him down in a state of distress. She had not called the police. Rather, she was standing on the curb outside of her home trying to gather her four children and two dogs while defendant was in the home. She was injured, visibly upset, crying loudly, and clearly in distress. There does not appear to have been any time for reflection

by Edgeston prior to her statements to Officer Dreger. The statements she made were during a five-minute interaction with Officer Dreger that the trial court accurately described as a "chaotic situation." Her children were crying inconsolably. She had visible injuries, was holding the side of her face, which was bruised, and had blood on her mouth. Her statements were directly related to the startling occurrence, which she described as being "slammed" and "punched" by defendant and getting her "a** beat."

¶ 29      The defendant asserts Officer Dreger's act of taking notes during the interaction, coupled with Edgeston's ability to respond to questions regarding her and defendant's identities, indicates she was no longer in an excited state of mind. Furthermore, defendant argues the spontaneity of Edgeston's statements was compromised by the brief interruption caused by Officer Dreger's concern about her managing her dogs. We are unconvinced. The fact that Edgeston's statements were made in response to questions does not destroy their spontaneity. Further, the momentary frustration regarding Officer Dreger's concerns about securing Edgeston's dogs reflects the ongoing chaotic nature of the situation. Defendant's argument that Edgeston was "no longer in shock or under undue stress from the altercation with [defendant] by the time she told the officers about their altercation" is contradicted by the video, which captured their interaction.

¶ 30      Because we conclude the trial court did not abuse its discretion in allowing Edgeston's statements under the excited utterance exception to the hearsay rule, there can be no plain error. Likewise, having found no error, we need not address defendant's ineffective assistance of counsel claim on this matter. Without a clear or obvious error, there can be no plain error and no ineffective assistance of counsel for failing to raise the claim. See *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179 ("Absent a clear or obvious error ***, neither the doctrine of

plain error nor a theory of ineffective assistance affords any relief from the forfeiture.").

¶ 31                                    B. Confrontation Clause

¶ 32          Defendant also contends Edgeston's statements made on the video were testimonial in nature and should have been excluded because he did not have the opportunity for cross-examination. We disagree.

¶ 33          The confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amends. VI. "A testimonial out-of-court statement by a witness who does not testify at trial is not admissible unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." *Connolly*, 406 Ill. App. 3d at 1027. The confrontation clause is inapplicable if the statements are not testimonial. *Id.* A statement made to a law enforcement officer is not testimonial when the circumstances objectively indicate that the primary purpose of any questioning was to address an ongoing emergency. In making this determination, courts consider the following: "whether the purpose was to determine a past fact or ascertain an ongoing event; whether the situation could be described as an emergency; whether the nature of the questions focused on the present or on the past; and finally, the level of formality involved." *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 827 (2006)).

¶ 34          We conclude Edgeston's statements to Officer Dreger were nontestimonial because Officer Dreger was addressing an ongoing emergency. Officer Dreger saw Edgeston in distress on the curb outside her home, and he stopped to assist her and inquire about the situation. He learned she had been physically assaulted by defendant, who remained in the home; thus, it was an ongoing situation. Edgeston had visible wounds, she was obviously upset and crying, and Officer Dreger's questions focused on understanding what had just happened,

learning whom he was dealing with, and assessing what needed to be done to assist her. Contrary to defendant's contention, this was not a formal interview, but a reaction to an ongoing emergency. Because Edgeston's statements were nontestimonial, the confrontation clause did not bar their admission.

¶ 35　　　　Having found Edgeston's statements were an exception to the hearsay rule that did not violate the confrontation clause, we conclude no error occurred. As stated previously, without a clear or obvious error, there can be no plain error and no ineffective assistance of counsel for failing to raise the claim. See *Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 36　　　　　　　　　　　　　III. CONCLUSION

¶ 37　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 38　　　　Affirmed.